**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DAWN MEEGAN, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:20-cv-00465 |
| v. | ) | |
| | ) | Hon. Thomas M. Durkin |
| NFI INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

James B. Zouras
Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
jzouras@stephanzouras.com
hjenkins@stephanzouras.com

**COUNSEL FOR PLAINTIFF AND THE
PUTATIVE CLASS**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

  I.   RELEVANT BACKGROUND ................................................................. 2

     A.   BIPA ................................................................................................ 2

     B.   Procedural History ....................................................................... 3

  II.  THE PROPOSED SETTLEMENT ......................................................... 4

     A.   The Settlement Class ................................................................... 4

     B.   The Settlement Fund.................................................................... 5

     C.   Additional Relief ........................................................................ 6

     D.   Notice and Settlement Administration ....................................... 6

     E.   Exclusion and Objection Procedures .......................................... 6

     F.   Release ......................................................................................... 7

  III.   CLASS ACTION SETTLEMENT PROCEDURE........................................ 7

  IV.   THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS UNDER RULE 23 ............................................................................... 9

  V.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ............... 17

     A.   The Terms of the Settlement Are Fair and Reasonable and Warrant Preliminary Approval. ........................................................................................... 20

       i.   The Settlement Amount Is Substantial Given the Strengths of Plaintiff's Claims and Attendant Risks (First Factor)............................................................. 21

       ii.   Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor).24

       iii.   The Reaction of the Class Has Been Positive (Third Factor). .............................. 26

       iv.   Competent Class Counsel Endorse this Agreement (Fourth Factor). ..................... 26

       v.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor). ......................................................................... 26

     B.   The Settlement Was the Result of Arm's-Length Negotiations, Without Any Hint of Collusion. ................................................................................................ 27

  VI.   THE PROPOSED CLASS NOTICE SHOULD BE APPROVED. .............................. 28

  VII.   PRELIMINARY APPROVAL OF PLAINTIFF'S COUNSEL'S REASONABLE FEES AND COSTS IS APPROPRIATE ....................................................................... 29

CONCLUSION................................................................................................ 30

## TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Grp., Inc. et al v. ACE INA Holdings, et al.,*
Nos. 07-cv-2898, 09-cv-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ........................ 2, 18

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ............................................................................................... passim

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) .................................................................. 18, 19, 21, 27

*Barragan v. Evanger's Dog & Cat Food Co.,*
259 F.R.D. 330 (N.D. Ill. 2009) ................................................................................ 11

*Boeing Co. v. VanGemert,*
444 U.S. 472 (1980) .................................................................................................. 30

*Campbell v. Advantage Sales & Mktg. LLC,*
No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) ........................... 29

*Castillo v. Noodles & Co.,*
No. 16-CV-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) ............................ 29

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
100 F.3d 1041 (1st Cir. 1996) .................................................................................. 27

*Cook v. McCarron,*
92 C 7042, 1997 WL 47448 (N.D. Ill. Jan. 30, 1997) ............................................. 19

*Curtiss-Wright Corporation v. Helfand,*
687 F.2d 171 (7th Cir. 1982) ................................................................................... 23

*De La Fuente v. Stokely-VanCamp, Inc.,*
713 F.2d 225 (7th Cir. 1983) .............................................................................. 11, 12

*Donovan v. Estate of Fitzsimmons,*
778 F.2d 298 (7th Cir. 1985) ................................................................................... 25

*Driver v. AppleIllinois,*
265 F.R.D. 293 (N.D. Ill. 2010) ............................................................................... 16

*EEOC v. Hiram Walker & Sons, Inc.,*
768 F.2d 884 (7th Cir. 1985) ...................................................................... 21, 22, 23

*Equity Funding Corp. of America Securities Litigation,*
603 F.2d 1353 (9th Cir. 1979) ................................................................................. 23

*Felzen v. Andreas,*
134 F.3d 873 (7th Cir. 1998) .............................................................................. 18, 19

*Florin v. Nationsbank of Ga., N.A.,*
24 F.3d 560 (7th Cir. 1994) ..................................................................................... 29

*Gautreaux v. Pierce,*
690 F.2d 616 (7th Cir. 1982) .............................................................................. 19, 26

*GMAC Mortgage Corp. of PA v. Stapleton,*
236 Ill. App. 3d 486 (Ill. App. 1st Dist. 1992) ....................................................... 17

*Golon v. Ohio Savs. Bank,*
No. 98-cv-7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999) ................................. 15

*Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.,*
988 F. Supp. 1130 (N.D. Ill. 1997) .......................................................................... 21

ii

*In re "Agent Orange" Product Liability Litigation,*
  818 F.2d 179 (2d Cir. 1987)................................................................................. 23
*In re AT&T Mobility Wireless Data Servs. Sales Litig.,*
  270 F.R.D. 330 (N.D. Ill. 2010).............................................. 13, 14, 19, 26
*In re Cendant Corp. PRIDES Litig.,*
  243 F.3d 722 (3d Cir. 2001)................................................................................ 30
*In re Chocolate Confectionary Antitrust Litig.,*
  289 F.R.D. 200 (M.D. Pa. 2012)...................................................................... 15
*In re Inter-Op Hip Prosthesis Liab. Litig.,*
  204 F.R.D. 330 (N.D. Ohio 2001) .................................................................. 19
*In re Prudential,*
  148 F.3d 283 (3d Cir. 1998)................................................................................ 30
*In re Traffic Exec. Ass'n-E. R.R.,*
  627 F.2d 631 (2d Cir. 1980)................................................................................ 20
*Isby v. Bayh,*
  75 F.3d 1191 (7th Cir. 1996) ................................................................... passim
*Kaufman v. American Express Travel Related Servs. Co., Inc.,*
  264 F.R.D. 438 (N.D. Ill. 2009).......................................................................... 9
*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.,*
  Nos. 05 cv 5944, 07 cv 2439, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) .......................... 19
*Kurgan v. Chiro One Wellness Ctrs. LLC,*
  No. 10 Civ. 1899, 2014 WL 642092 (N.D. Ill. Feb. 19, 2014).................................... 10, 11, 16
*Ladegaard v. Hard Rock Concrete Cutters, Inc.,*
  No. 00 Civ. 5755, 2000 WL 1774091 (N.D. Ill. Dec. 1, 2000) ......................................... 14
*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust,*
  834 F.2d 677 (7th Cir. 1987) ............................................................................. 23
*Matter of Cont'l Ill. Secs. Litig.,*
  962 F.2d 566 (7th Cir. 1992) ............................................................................. 29
*Matter of Cont'l Ill. Secs. Litig.,*
  985 F.2d 867 (7th Cir. 1993) ............................................................................. 29
*McCue v. MB Financial, Inc.,*
  No. 15 Civ. 0988, 2015 WL 1020348 (N.D. Ill. Mar. 6, 2015) .......................................... 15
*McKinnie v. JP Morgan Chase Bank, N.A.,*
  678 F. Supp. 2d 806 (E.D. Wis. 2009).................................................................... 15
*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.,*
  762 F.2d 1093 (D.C. Cir. 1985) .......................................................................... 18
*Moreno v. Napolitano,*
  No. 11 Civ. 5452, 2014 WL 4911938 (N.D. Ill. Sept. 30, 2014) ....................................... 12
*Muro v. Target Corp.,*
  580 F.3d 485 (7th Cir. 2009) ............................................................................. 12
*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.,*
  231 F.R.D. 280 (N.D. Ill. 2005)........................................................................... 12
*Patterson v. Stovall,*
  528 F.2d 108 (7th Cir. 1976) ...................................................................... 18, 21
*Redman v. RadioShack Corp.,*
  763 F.3d 622 (7th Cir. 2014) ............................................................................. 29

iii

*Retired Chicago Police Assoc. v. City of Chicago*,
   7 F.3d 584 (7th Cir. 1993) ............................................................................ 13
*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) ........................................................................ 25
*Robles v. Corporate Receivables, Inc.*,
   220 F.R.D. 306 (N.D. Ill. 2004)................................................................... 14
*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ..................................................................... 11
*Rubenstein v. Republic Nat'l Life Ins. Co.*,
   74 F.R.D. 337 (N.D. Tex. 1976) .................................................................. 25
*Saltzman v. Pella Corp.*,
   257 F.R.D. 471 (N.D. Ill. 2009).............................................................. 11, 12
*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................... 22
*Seiden v. Nicholson*,
   72 F.R.D. 201 (N.D. Ill. 1976)..................................................................... 25
*Smith v. Sprint Commc'ns Co.*,
   387 F.3d 612 (7th Cir. 2004) ......................................................................... 9
*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ................................................................... 20, 21
*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*,
   No. 02 Civ. 1109, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004)................................. 29
*Tims v. Black Horse Carriers, Inc.*,
   No. 1-20-0563 ............................................................................................... 4
*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
   309 F.3d 978 (7th Cir. 2002) ....................................................................... 17
*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................... 29
*Zolkos v. Scriptfleet, Inc.*,
   No. 12 Civ. 8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ............................. 9

**Statutes**

Illinois Biometric Information Privacy Act
   740 ILCS 14/1, et seq.............................................................................. 1, 3

**Other Authorities**

5 James Wm. Moore,
   Moore's Federal Practice ¶ 23.80[1], at 23-36 (3d ed. 2001 ............................ 30
Herbert B. Newberg & Alba Conte,
   *Newberg on Class Actions*, § 11.22 *et seq.* (4th ed. 2002) ....................... passim
*Manual for Complex Litigation* (Fourth)
   § 21.612.................................................................................................... 10
Manual for Complex Litigation (Third),
   § 30.41 (1995) ...................................................................................... 18, 19

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 1

**<u>INTRODUCTION</u>**

Plaintiff Dawn Meegan ("Meegan" or "Plaintiff") brought a putative class action on December 16, 2019, in the Circuit Court of Cook County against Defendant NFI Industries, Inc. ("NFI" or "Defendant"), asserting class claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. On January 21, 2020, Defendant filed a Notice of Removal in the United States District Court for the Northern District of Illinois.

The Parties have reached a proposed Settlement that provides all Settlement Class Members with the ability to receive a share of the proposed Settlement Fund. *See* Settlement Agreement, attached hereto as <u>Exhibit 1</u>.[1] The Settlement Agreement provides significant relief to approximately 3,879 current and former persons who worked at NFI and establishes a common cash settlement fund in the amount of $3,491,100.00, from which Settlement Class Members will be compensated without having to file claim forms or take any other action. If approved, the Settlement Agreement will bring certainty, closure, and significant and valuable relief for individuals to what otherwise would likely be contentious and costly litigation regarding Defendant's alleged unlawful collection, use, storage, and dissemination of individuals' biometric identifiers and/or biometric information (collectively referred to herein as "biometric data").

Plaintiff now seeks preliminary approval of the Settlement, certification of a Settlement Class, appointment of Class Counsel, and approval of the proposed form and method of Class Notice. This Motion describes in detail the reasons why preliminary approval is in the best interests of the Class and is consistent with Rule 23 of the Federal Rules of Civil Procedure. As discussed in more detail below, the most important consideration in evaluating the fairness of a proposed

---

[1] Unless otherwise defined herein, all capitalized terms used herein will have the same meaning as defined in the Settlement Agreement.

class action settlement is the strength of the plaintiff's case on the merits balanced against the relief obtained in the settlement. *See Am. Int'l Grp., Inc. et al v. ACE INA Holdings, et al.*, Nos. 07-cv-2898, 09-cv-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012). While Plaintiff believes she could secure class certification and prevail on the merits at trial, success is not guaranteed, particularly given the uncertainty in the law surrounding BIPA, and that Defendant denies Plaintiff's allegations and is prepared to vigorously defend this case. The terms of the Settlement, which includes a Settlement Fund providing Settlement Class Members the ability to receive meaningful cash compensation, along with obtaining Defendant's acknowledgment that it has implemented procedures to comply with BIPA, meet and exceed the applicable standards of fairness. Accordingly, the Court should preliminarily approve the Settlement so that Settlement Class Members can receive notice of their rights and the claims administration process may begin.

## I.     RELEVANT BACKGROUND

### A.     BIPA

BIPA is an Illinois statute that provides individuals with certain protections for biometric data covered by the statute. To effectuate its purpose, BIPA requires private entities that seek to use "biometric identifiers" and "biometric information" to:

1.     Inform the individual in writing that biometric identifiers and/or biometric information will be collected, stored, used, or disseminated;

2.     Inform the individual in writing of the specific purpose and length of time for which such biometric identifiers and/or information is being collected, stored, used, and disseminated;

3.       Obtain a written release from the individual allowing the capture, collection, storage, use, and dissemination of their biometric identifiers and/or information; and

4.       Develop and adhere to a publicly available retention schedule and guidelines for permanently destroying biometric identifiers and/or information.

740 ILCS 14/15.

BIPA was enacted in large part to protect certain individual biometric data, provide individuals with a means of enforcing their statutory rights, and regulate the practice of collecting, using, and disseminating such sensitive information.

## B. Procedural History

Plaintiff filed her putative Class Action Complaint in the Circuit Court of Cook County on December 16, 2019, alleging that Defendant utilizes biometric timekeeping devices at its facilities in Illinois and requires its direct employees and staffed temporary workers to use the devices when clocking into and out of work but failed to comply with BIPA by: (1) failing to inform individuals in writing that they will be capturing, collecting, storing, using, and disseminating biometric data prior to doing so; (2) failing to obtain a written release for the capture of biometric data prior to such capture; (3) failing to inform individuals in writing of the specific purpose and length of time for which biometric data is captured; and (4) failing to develop and adhere to a publicly available retention schedule and guidelines for permanently destroying biometric data.

On January 21, 2020, Defendant filed a Notice of Removal in the United States District Court for the Northern District of Illinois (Dkt. No. 1), where it was assigned to and remains pending before the Hon. Thomas M. Durkin. Defendant moved to dismiss Plaintiff's Class Action

Complaint on January 28, 2020, arguing that Plaintiff's complaint was untimely. The Parties completed briefing on March 12, 2020, and the Court entered an opinion on June 4, 2020, denying Defendant's motion. NFI answered Plaintiff's Complaint on June 18, 2020.

In July 2020, Plaintiff issued Rule 26(a)(1) disclosures and her first set of discovery requests. Defendant moved to stay this matter on September 14, 2020, citing the Illinois Appellate Court case regarding BIPA's statute of limitations, *Tims v. Black Horse Carriers, Inc.*, No. 1-20-0563. After the Parties fully briefed the motion to stay, the Court denied the motion on October 8, 2020, and entered a discovery schedule on October 19, 2020. The Parties engaged in written and oral discovery, including the production of hundreds of pages of documents, three depositions, and a subpoena to Kronos Incorporated, Defendant's third-party biometric timekeeping provider. Following the completion of discovery, Plaintiff filed and the Parties fully briefed her Motion and Memorandum in Support of Rule 23 Class Certification. The Court took the motion under advisement on March 9, 2022.

On April 28, 022, the Parties jointly moved for a stay of proceedings to explore resolution. Counsel for the Parties informally exchanged information prior to the mediation, and the Parties participated in a full-day mediation with Hon. Morton Denlow (Ret.) of JAMS on June 7, 2022. At the mediation, the Parties were able to enter into an agreement in principle and executed a Memorandum of Understanding. Following subsequent negotiations throughout June and July 2022, the Parties executed the Settlement Agreement for which the Parties now seek preliminary approval, attached hereto as Exhibit 1.

## II.  THE PROPOSED SETTLEMENT

### A.  The Settlement Class

The proposed Settlement would establish a Settlement Class defined as follows:

> All individuals currently or formerly working at NFI, or any of its subsidiaries or affiliates, in the State of Illinois who had their fingerprint data collected, captured, received, obtained, maintained, stored, or disclosed between December 16, 2014, and November 30, 2018 ("Settlement Class").

Exhibit 1, ¶ 39. The Parties estimate that the Class size is approximately 3,879 members. *Id*. ¶ 5.

### B.    The Settlement Fund

The proposed Settlement will establish a common $3,491,100.00 Settlement Fund. Exhibit 1, ¶¶ 36, 43(a). The Settlement Fund shall be divided among members of the Settlement Class that do not opt out as follows: $900.00 per Settlement Class Member, less *pro rata* reductions for Class Counsel's Fee Award, Service Award to the Class Representative and Administrative Expenses. *Id*. ¶¶ 36, 44. Importantly, Settlement Class Members do not have to submit a claim form or otherwise "opt in" to the Settlement. *Id*. ¶ 45. Checks to the Settlement Class Members shall remain valid and negotiable for 180 days from the date of their issuance, and thereafter shall become void if not cashed within that time. *Id*. ¶¶ 46, 51(d). Within 75 days of issuance of settlement checks, the Settlement Administrator shall provide a list of any settlement checks that are not cashed/negotiated within 60 days of issuance to Counsel for the Parties. *Id*. ¶ 51(d). Within 10 days thereafter, the Settlement Administrator shall attempt to confirm or obtain valid mailing addresses, including by telephone, and send a reminder post-card to affected Class Members. *Id*. Additionally, at the conclusion of the 180-day period, the Settlement Administrator shall provide a list of any settlement checks that are not then cashed/negotiated to Counsel for the Parties. *Id*. Within 10 days of the expiration of the 180-day period, the Settlement Administrator shall transfer such uncashed funds to NFI Cares[2] as a *cy pres*. *Id*.

---

[2] NFI Cares is administered by an independent charitable foundation called Helping Hands. Helping Hands has no affiliation with NFI and is responsible for reviewing and approving grants to employees in need. Once Helping Hands approves an applicant, the grant is executed by another independent entity, the NEMA Foundation, which does business as Provision Bridge. NFI

## C.    Additional Relief

The Settlement also provides significant injunctive relief to the Settlement Class. Specifically, Defendant agreed to provide a declaration attesting that it came into compliance with BIPA by November 30, 2018. Exhibit 1, ¶ 52.

## D.    Notice and Settlement Administration

The claims at issue in the Litigation consist of Defendant's alleged violations of BIPA with respect to a group of workers, including both NFI's direct employees and temporary workers obtained through staffing companies. Accordingly, to reach as many potential Class Members as possible, the Settlement Administrator will provide individual Notice of the Settlement, substantially in the form of Exhibit A to the Settlement Agreement, to Class Members via U.S. Mail and email where Defendant or the relevant staffing company has a last-known mailing and email address or the mailing address information can be determined by the Settlement Administrator. Exhibit 1, ¶ 50(b). For all mailings returned as undeliverable, the Settlement Administrator shall perform a reverse look-up to find updated addresses and will cause the Notice mailing to be re-mailed to those members of the Settlement Class. *Id.*

## E.    Exclusion and Objection Procedures

While the Parties expect little to no opposition, Settlement Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. The procedures and deadlines for filing exclusion requests and objections (*see* Exhibit 1, § IX) will be identified in the Notice directly sent to Class Members. The Notice informs Settlement Class Members that

---

is not involved in making decisions regarding grants or in administering their funding. The organization exists to provide NFI workers in need with support. The Parties have agreed to restrict the *cy pres* so that any funds would only go to Illinois workers. *See* Exhibit 2, Decl. of JeanMarie Decker.

the Final Approval Hearing will be their opportunity to appear and have their objections heard. The Notice also informs Settlement Class Members that they will be bound by the Release contained in the Settlement Agreement unless they exercise their right to exclusion in a timely manner. *See* <u>Exhibit A</u> to the Settlement Agreement.

### F.  Release

In exchange for the relief described above, Settlement Class Members who do not exclude themselves will provide Defendant and the other Released Parties a full release of all claims relating to the Released Parties which relate to or arise out of the allegations in the Complaint and which relate in any way to information that is or could be protected under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.*, or any other similar state, local, or federal law, regulation, or ordinance, or common law. <u>Exhibit 1</u>, Sec. VII.

### III.  CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (*"Newberg"*), § 11.22 *et seq.* (4th ed. 2002). This process safeguards Class Members' procedural due process rights and enables the Court to fulfill its role as guardian of Class interests. With this motion, Plaintiff requests that the Court take the first step – granting preliminary approval of the Settlement Agreement, approving the proposed Class Notice and ordering its distribution.

Plaintiff respectfully proposes that the Court issue an order setting the following schedule ("Preliminary Approval Order"):

1.  **Class List Dates:** Defendant will provide the Settlement Administrator with the Class Member information in its possession within seven days of entry of the Preliminary Approval Order (the "Class List"). Defendant and Class Counsel will work together collaboratively to obtain Class List information from the relevant staffing companies, of which there are 17, and the staffing companies will provide that information either to Defendant or directly to the Settlement Administrator. The Class List shall include: last known name, address, telephone number, e-mail address (where available), and Social Security number for each Settlement Class member to the extent available. The Settlement Administrator will update the Class List using the U.S. Postal Service's database of verifiable mailing addresses and the National Change-of-Address database.

2.  **Notice Dates:** Within 14 days of receipt of the complete Class List, individual Notice shall be sent via US Mail and email (substantially in the form of Exhibit A to the Settlement Agreement). For all mailings returned as undeliverable, the Settlement Administrator shall perform a reverse look-up to find updated addresses and will cause the Notice mailing to be re-mailed to those members of the Settlement Class.

3.  **Deadline for Opt-Outs/Objections:** Each opt-out and/or objection must be submitted/postmarked or filed with the Court within 45 days of the date the Notice is mailed.

4.  **Submission of Papers in Support of Attorneys' Fees and Expenses:** Must be filed no later than seven days prior to the date of the Final Approval Hearing.

5.  **Submission of Papers in Support of Final Approval of Settlement:** Must be filed no later than seven days prior to the date of the Final Approval Hearing.

6.  **Final Approval Hearing:** Will occur approximately 90 days after entry of the Preliminary Approval Order, or such other date as ordered by the Court.

Once this Court has ruled on the motion for preliminary approval, the deadlines for providing Notice, opting out of the Settlement, and submitting objections to the proposed Settlement will begin to run. The schedule set forth below, which is subject to the timing of actions

to be taken by the Parties and the Court in this case, provides the Court with an approximate timeline of the various steps in the settlement approval process under the Settlement.

|     | *Event* | *Timing* |
| --- | --- | --- |
| 1. | Motion for Preliminary Approval Filed | |
| 2. | Counsel to Provide Class List information in its possession to Settlement Administrator | Within 7 Days After Preliminary Approval |
| 3. | Settlement Administrator to Issue Class Notice | Within 14 Days After receipt of the complete Class List |
| 4. | Deadline for Submitting Opting Out or Objecting to Settlement | 45 Days After the Issuance of Class Notice by the Settlement Administrator |
| 5. | Final Approval Hearing | Approximately 90 Days After Preliminary Approval |
| 6. | Effective Date | The day of Final Judgment, unless the settlement is approved over objection, in which case the Effective Date will be the first business day after the last day of the period for appeal of the Final Judgment, or if an appeal has been filed, the date on which the appeal is final |
| 7. | Defendant to Fund the Settlement Payment Amount | $3,491,100.00 within 14 days of the entry of the Preliminary Approval Order and receipt of Settlement Administrator instructions and a Form W-9 for the Settlement Administrator |
| 8. | Settlement Administrator to Distribute Funds to Class Members | Within 14 Days After Effective Date |

## IV. THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS UNDER RULE 23

"Before addressing the substantive provisions of the Settlement Agreement, the Court must first determine whether the proposed class can be certified" for settlement purposes. *Kaufman v. American Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 441-42 (N.D. Ill. 2009) (citation omitted). Class certification is an exercise of judicial discretion, and "[t]he fact that the parties have reached a settlement is a relevant consideration in the class-certification analysis." *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *1 (N.D. Ill. Dec. 12, 2014), *citing Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004); *see also Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 620 (1997) ("[c]onfronted with a request for settlement-only class

certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

For settlement purposes only, the Parties have agreed that the Court should make preliminary findings and enter an Order granting provisional certification of the Settlement Class and appoint Plaintiff and her counsel to represent the Class. "The validity of use of a temporary settlement class is not usually questioned." *Newberg*, §11.22. The *Manual for Complex Litigation* explains the benefits of settlement classes:

> Settlement classes – cases certified as class actions solely for settlement – can provide significant benefits to class members and enable the Defendant to achieve final resolution of multiple suits. Settlement classes also permit Defendant to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved[.]…An early settlement produces certainty for the plaintiffs and Defendant and greatly reduces litigation expenses.

*Manual for Complex Litigation* (Fourth) § 21.612.

When presented with a request to preliminarily approve a proposed class settlement, a court's evaluation may be more relaxed than when considering entry of a final order binding all class members to the settlement's terms. Nevertheless, the Court must still determine whether the proposed Settlement Class satisfies the requirements of Rule 23. As demonstrated below, no reason exists to refrain from provisionally certifying, for settlement purposes, the proposed Settlement Class.

Rule 23(a)(1). The first requirement asks whether the proposed class is so numerous that joinder is impracticable. Although the rule provides no firm number, courts have held that numerosity can be satisfied where more than 40 putative class members exist. *See, e.g.*, *Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10 Civ. 1899, 2014 WL 642092, at *5 (N.D. Ill. Feb. 19, 2014). Here, 3,879 of Defendant's current and former direct employees and staffed workers comprise the putative Rule 23 class. Accordingly, Rule 23(a)(1)'s numerosity requirement is

met.

Rule 23(a)(2). The next question is whether there are questions of law or fact common to the class. "Commonality requires that there be at least one question of law or fact common to the class." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009), *quoting Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A common question may be shown where claims of individual members are based on the common application of a statute or where class members are aggrieved by the same or similar conduct. *Kurgan,* 2014 WL 642092 at *6.

In this case, all members of the proposed Class share a common statutory BIPA claim arising out of standardized conduct: the alleged collection, storage, use, and dissemination of Settlement Class Members' biometric data without consent. Proving a BIPA violation would require the resolution of some of the same factual and legal issues, including: (1) whether the information taken from Settlement Class Members constituted biometric identifiers or biometric information as defined by BIPA; (2) whether such information was taken without the consent required under BIPA; (3) whether Defendant had a BIPA-compliant, publicly-available, written policy addressing retention, storage, and destruction of biometric identifiers and information; (4) whether such conduct violated BIPA; and (5) whether Defendant's biometric timekeeping devices are subject to and/or could comply with the requirements of BIPA.

Rule 23(a)(3). A "'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the same legal theory.'" *Rosario*, 963 F. 2d at 1018, *quoting De La Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Rule 23(a)'s typicality requirement should be "liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009). So long as "the representative party's claim arises from the same course of

conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," typicality is satisfied. *Id.* (citation omitted); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). Rule 23(a)(3) "'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009), *quoting De La Fuente,* 713 F.2d at 232.

Plaintiff's claims are typical of the claims of other Class Members because they arise from the same course of action by Defendant which applies to all Settlement Class Members: Defendant's alleged failure to properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their biometric data was collected, stored, disseminated, and used; the alleged failure to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data; and the alleged failure to obtain written consent prior to collecting, storing, using, and disseminating Plaintiff's and Settlement Class Members' biometric data. While there may be minute factual differences between claims of the Plaintiff and those of other putative class members, their claims are nevertheless based on the same legal theory. *Moreno v. Napolitano*, No. 11 Civ. 5452, 2014 WL 4911938, at *9 (N.D. Ill. Sept. 30, 2014) ("[S]imilarity of legal theory may control even in the face of differences of fact") (internal quotations omitted). Thus, Plaintiff's claims are clearly typical of those of the claims of other Class Members.

Rule 23(a)(4). The requirement that "the representative parties . . . fairly and adequately protect the interests of the class . . . serves to uncover conflicts of interest between the named

parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. This requirement "tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining . . . whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626 n.20. Because of the unique nature of the class action device, "[t]he adequacy-of-representation requirement 'is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members.'" *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343 (N.D. Ill. 2010), *quoting Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (further internal quotations and citation omitted).

"A class representative must . . . be part of the class and possess the same interest and suffer the same injury as the class members." *In re AT&T Mobility Wireless Servs.*, 270 F.R.D. at 343 (internal quotations and citation omitted). "This requires the district court to ensure that there is no inconsistency between the named parties and the class[,] . . . [because a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id.* (internal quotations and citations omitted).

The proposed Class Representative, Dawn Meegan, worked at one of Defendant's facilities during the class period, and her claims are based on the same alleged BIPA violations as the rest of the proposed Class. She has shown her commitment to vigorously prosecuting the Action by assisting Plaintiff's counsel in preparing the Complaint and maintaining contact with Class Counsel. Ms. Meegan answered written discovery and sat for a deposition. The proposed Class Representative has also provided invaluable information and otherwise assisted Class Counsel in understanding Plaintiff's claims and Defendant's defenses. *Wilkins*, 2015 WL 1234738 at *12

(adequacy of representation satisfied where Plaintiff demonstrated she was sufficiently interested in the outcome of the case because she sat for her deposition and responded to written discovery). This qualifies Plaintiff as a "conscientious representative plaintiff" and satisfies the adequacy of representation requirement. *Robles v. Corporate Receivables, Inc.*, 220 F.R.D. 306, 314 (N.D. Ill. 2004).

The Class Representative does not have any interests antagonistic to the Class. Rather, she has the same interests and has suffered the same damages for Defendant's alleged BIPA violations as the proposed class members. *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 Civ. 5755, 2000 WL 1774091, at *5-6 (N.D. Ill. Dec. 1, 2000) (no antagonistic interest where plaintiff alleged same violation and remedy as the rest of the class). Likewise, Class Counsel have fairly and adequately protected the interests of the Class. Plaintiff's attorneys are highly experienced and have successfully acted as representative counsel in numerous complex class actions, in federal and state courts in the Northern District of Illinois and throughout the United States, including several successfully resolved and active class actions on behalf of other individuals aggrieved under BIPA with virtually identical claims. *See* Exhibit 3, Decl. of Haley R. Jenkins ("Jenkins Decl."), Attachment A (Stephan Zouras, LLP Firm Resume). "Plaintiffs' [C]ounsel have invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement." *In re AT&T Mobility Data Servs.*, 270 F.R.D. at 344 (citation omitted).

Class Counsel invested time and resources, including investigating possible claims and defenses to this case before the Settlement was reached. Indeed, the exchange of information leading to settlement, and Class Counsel's independent investigation, as well as arm's-length negotiations with Defendant, demonstrate Class Counsel's pursuit of the interests of the class and

their determination to avoid even an appearance of collusion with Defendant. *See McCue* v. *MB Financial, Inc.*, No. 15 Civ. 0988, 2015 WL 1020348, at \*2 (N.D. Ill. Mar. 6, 2015), *citing McKinnie* v. *JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009). In short, Named Plaintiff and her counsel have demonstrated that they "are fully capable of litigating this case." *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. 2012). Accordingly, the adequacy requirement is satisfied.

Rule 23(b)(3). Once Rule 23(a) is satisfied, Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis…Such proof obviates the need to examine each class member's individual position." *Golon v. Ohio Savs. Bank*, No. 98-cv-7430, 1999 WL 965593, at \*4 (N.D. Ill. Oct. 15, 1999). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620.

Here, there are numerous common questions of law and fact that predominate over any questions that may affect individual Class Members so as to render a class settlement appropriate. The common questions resulting from Defendant's alleged conduct predominate over any individual issues that may exist and can be answered on a class-wide basis based on common evidence maintained by Defendant. Plaintiff and putative Class Members allege that they were uniformly required, as a condition of employment, to scan their fingers into the biometric timekeeping devices. The question of whether Defendant violated BIPA and of the right of

Plaintiff to statutory damages can, for provisional certification purposes, be determined for the entire Class in a single adjudication, without considering individualized issues. *See Kurgan*, 2014 WL 642092 at *9 ("Where, as here, the focus is on the liability-imposing conduct of the defendant that is identical for all putative plaintiffs, the predominance element is satisfied."). Accordingly, the predominance prong of Rule 23(b)(3) is satisfied for purposes of settlement class provisional certification.

Rule 23(b)(3) lists four factors that the Court should consider in taking into account whether a class action is superior to other methods of adjudicating this action: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23 (b)(3)(A)-(D).

An assessment of the Rule 23(b)(3) "superiority" factors shows that a class action is the preferred procedure in this case. The superiority requirement is satisfied when "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Driver v. AppleIllinois*, 265 F.R.D. 293, 304 (N.D. Ill. 2010), *quoting Amchem*, 521 U.S. at 615.

This case is particularly well suited for class treatment because the claims of Plaintiff and the proposed Settlement Class Members involve identical alleged violations of a state statute for the alleged unauthorized collection, storage, use, and dissemination of Class Members' biometric data while allegedly failing to comply with BIPA. Absent a class action, most members of the

Settlement Class would find the cost of litigating their claims – each of which is statutorily limited to $1,000 per negligent violation of BIPA and $5,000 per reckless violation of BIPA – to be prohibitive. It is thus unlikely that individuals would invest the time and expense necessary to seek relief through individual litigation. Moreover, because the Action will now settle, the Court need not be concerned with issues of manageability relating to trial. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Nor should the Court "judge the legal and factual questions" regarding certification of the proposed Settlement Class by the same criteria as a proposed class being adversely certified. *See GMAC Mortgage Corp. of PA v. Stapleton*, 236 Ill. App. 3d 486, 493 (Ill. App. 1st Dist. 1992).

A class action is the superior method of resolving large-scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and thus Rule 23 certification of the proposed Settlement Class for purposes of settlement is appropriate.

## V.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal citations omitted); *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) ("Federal courts favor settlement, so the district court's inquiry into the settlement structure is limited to whether the settlement is lawful, fair, reasonable and adequate.") (citing *Isby*, 75 F.3d at 1198-99); *Newberg* § 11.41 ("The

compromise of complex litigation is encouraged by the courts and favored by public policy."). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching. *Id.* A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp.*, 2012 WL 651727, at *10 (internal citation and quotation marks omitted).

The dismissal or compromise of any class action requires the Court's approval. Fed. R. Civ. P. 23(e). The decision to approve a proposed settlement is committed to the Court's sound discretion. *See, e.g.*, *Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"). The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. Manual for Complex Litigation (Third), § 30.41, at 236 (1995). Although the legal standards for preliminary and final approval overlap, preliminary approval requires only a threshold finding that the settlement could be approved as fair and adequate after notice to the class.

At the preliminary approval stage, the Court's task is merely to "determine whether the proposed settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (internal citation and quotation marks omitted) (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate"),

18

*overruled on other grounds by Felzen*, 134 F.3d; *see also Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (citations omitted). "The purpose of the initial hearing is to ascertain whether there is any reason to notify the class members of the proposed settlement and proceed with a fairness hearing." *Cook v. McCarron*, 92 C 7042, 1997 WL 47448, at *7 (N.D. Ill. Jan. 30, 1997), *citing Armstrong*, 616 F.2d at 314. Once the settlement is found to be "within the range of possible approval" at the initial fairness hearing, the final approval hearing is scheduled and notice is provided to the class. *Id.*

Courts in this district perform a "summary version" of the final fairness inquiry at the preliminary approval stage. *See, e.g.*, *In re AT&T*, 270 F.R.D. at 346, *quoting Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, Nos. 05 cv 5944, 07 cv 2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007). In considering whether to grant preliminary approval of a proposed settlement agreement, the Court utilizes a "threshold inquiry" intended merely to realize conspicuous defects. *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337-38 (N.D. Ohio 2001). Thus, preliminary approval is warranted:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval . . . [.]

Manual for Complex Litigation § 30.41 at 265 (3d ed. 2000). Unless the Court's initial examination "discloses[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to class members under Rule 23(e). *Id.*; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631,

634 (2d Cir. 1980) (a court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness") (internal quotation omitted). After preliminary approval, the second step of the approval process is the final determination, following a hearing at which time any objections by class members may be considered. The Court then determines whether the settlement is fair, reasonable and adequate from the standpoint of the class. *Newberg* § 11.41.

A.     **The Terms of the Settlement Are Fair and Reasonable and Warrant Preliminary Approval.**

The Settlement represents a fair and reasonable resolution of the Litigation and is worthy of notice to and consideration by the Settlement Class Members. It will provide significant financial relief to Settlement Class Members as compensation for their Released Claims, will ensure that Defendant's biometric timekeeping practices comply with BIPA, which will benefit both Settlement Class Members and future employees, and will relieve the Parties of the burden, uncertainty, and risk of continued litigation.

A court generally will preliminarily approve a proposed class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id*. at § 11.26, it is useful to consider the criteria on which the Court will ultimately judge the settlement.

In making these determinations, courts consider five factors: (1) the strength of the plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount

of discovery completed. *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.3d at 1199. Further, a court must view the settlement in its entirety, rather than focus on an individual component. *Id*. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997). All of these factors weigh in favor of approval of the Settlement Agreement and preliminary approval.

### i. The Settlement Amount Is Substantial Given the Strengths of Plaintiff's Claims and Attendant Risks (First Factor).

Defendant has agreed to settle this case for $3,491,100.00 for a class of 3,879 employees. Exhibit 1, ¶¶ 5, 36, 43(a). The settlement amount, therefore, represents significant value for these Class Members – a gross amount of $900.00 per Settlement Class Member, less *pro rata* reductions for Class Counsel's Fee Award, Service Award to the Class Representative and Administrative Expenses, or approximately $570.

In evaluating the strength of the plaintiffs' case on the merits as compared to the amount of the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Patterson*, 528 F.2d at 114 (collecting cases). Courts "have been admonished to refrain from resolving the merits of the controversy of making a precise determination of the parties' respective legal rights." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Because "[t]he essence of settlement is compromise," *Id.*, courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200; *see also Armstrong*, 616 F.2d at 315 (noting that "the essence of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes"). Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their]

position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this Action is far from certain. In addition to any defenses on the merits Defendant would raise, Plaintiff would also otherwise be required to prevail on a class certification motion, which is highly contested and for which success is certainly not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id.* Approval would allow Plaintiff and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. *Id.* at 582.

While Plaintiff believes she would likely prevail on her claims, she is also aware that Defendant has expressed a firm denial of her material allegations and the intent to pursue a number of substantial legal and factual defenses, including but not limited to whether BIPA is unconstitutional, whether Plaintiff asserted an intentional or reckless BIPA violation sufficient to confer statutory damages, whether Plaintiff's or Class Members' claims are barred by the statute of limitations, and whether the devices at issue collect biometric identifiers and/or information, as defined by BIPA. If successful, these defenses could result in Plaintiff and the proposed Settlement Class Members receiving no payment whatsoever. This risk is readily apparent, given the number of other legal and factual issues that have gone untested to date without controlling legal authority. Taking these realities into account and recognizing the risks involved in any litigation, the

monetary relief available to each Settlement Class Member in the Settlement represents a truly excellent result for the Settlement Class.

Here, the Settlement provides far more than "a fraction of the potential recovery." Though not providing a maximum value that conceivably might be awarded at trial at a later date, assuming Plaintiff overcame Defendant's anticipated summary judgment motion and objections to class certification, the Settlement provides substantial monetary benefits now, without the time, difficulties, expense, and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

"District courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 179, 181 (2d Cir. 1987) (internal quotes and citation omitted). The allocation of a settlement fund among competing claimants is one of the court's traditional equitable functions. *Curtiss-Wright Corporation v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982). In exercising its equitable power, a court has the discretion to favor those class members who have relatively stronger legal claims. *See Equity Funding Corp. of America Securities Litigation*, 603 F.2d 1353, 1366-67 (9th Cir. 1979) (upholding a plan of allocation in which those class members with stronger claims received more than those with weaker claims).

In determining the allocation method, the Parties considered, among other things, the uncertainty in the law surrounding BIPA. Accordingly, each Settlement Class Member will receive the gross amount of $900.00, less *pro rata* reductions for Class Counsel's Fee Award, a Service

Award to the Class Representative and Administrative Expenses, or approximately $570. Exhibit 1, ¶ 44. Settlement Class Members will not have to submit a claim form or otherwise "opt-in" to the Class to receive a settlement payment. *Id*. ¶ 45. Checks to the Settlement Class Members shall remain valid and negotiable for 180 days from the date of their issuance, and thereafter shall become void if not cashed within that time period. *Id*. ¶¶ 46, 51(d). Within 75 days of issuance of settlement checks, the Claims Administrator shall provide a list of any settlement checks that are not cashed/negotiated within 60 days of issuance to Counsel for the Parties. *Id*. Within 10 days thereafter, the Settlement Administrator shall attempt to confirm or obtain valid mailing addresses, including by telephone, and send a reminder post-card to affected Class Members. *Id*. At the conclusion of the 180-day period, the Settlement Administrator shall provide a list of any settlement checks that are not then cashed/negotiated to Counsel for the Parties. *Id*. Within 10 days of the expiration of the 180-day period, the Settlement Administrator shall transfer such uncashed funds to Illinois Legal Aid Online as a *cy pres*. *Id*. The Settlement Administrator will include language on all settlement checks stating that such checks are void 180 days following the date such checks are originally issued. *Id*.

The proposed Settlement thus ensures that the Class Members will receive significant monetary relief and receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law. Weighing the benefits of the Settlement against the available evidence and the risks associated with proceeding in the Action, the settlement amount is reasonable. This factor therefore weighs in favor of preliminary approval.

> ### ii. Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part

of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Class Counsel believes Plaintiff's case is strong, it is subject to considerable risks and costs if the case is not settled, as discussed above.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort.").

Here, further litigation would certainly result in fully briefed motions for summary judgment on liability, as well as other issues, and the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the Action. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that the Litigation holds for the Class. *See Isby*, 75 F.3d at 1199. The proposed Settlement, on the other hand, provides immediate benefits for all Class Members. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976). This factor therefore weighs in favor of preliminary approval.

### iii. The Reaction of the Class Has Been Positive (Third Factor).

Because the Parties have not yet sent the Class Notice, it is premature to fully assess this factor. *In re AT&T*, 270 F.R.D. at 349. However, Plaintiff supports the Settlement, as does Class Counsel. The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to object.

### iv. Competent Class Counsel Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 634, *quoting Armstrong*, 616 F.2d at 325); *see also Isby*, 75 F.3d at 1200. Further, there is no indication that the proposed Settlement Agreement is the result of collusion. *See Id.*

Class Counsel are competent and experienced in class actions, particularly complex class actions of this kind, and are intimately familiar with the strengths and weaknesses of the claims and defenses. *See* Jenkins Decl. ¶¶ 7, 14. Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the Settlement reached. *Id.* ¶ 14. This factor therefore weighs in favor of preliminary approval.

### v. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).

This complex class action was resolved less than three years after it was initiated. This period involved research, analysis, investigation, formal discovery, the informal exchange of information, and extensive negotiations culminating in a full-day mediation with Hon. Morton Denlow (Ret.) of JAMS. *See* Jenkins Decl. ¶¶ 7, 14. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the Settlement. *Id*. Given the

significant amount of time and resources spent by the Parties in discovery and advancing the Action, this factor favors preliminary approval. The factors all weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court may reevaluate its determination at the Final Approval Hearing.

### B.    The Settlement Was the Result of Arm's-Length Negotiations, Without Any Hint of Collusion.

There is plainly no collusion or fraud with respect to this proposed Settlement, which was reached after intense negotiation over the course of several weeks. As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.

*Newberg* §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the Settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, analysis, and motion practice. Therefore, this Court should find that an initial presumption of fairness exists to support preliminary approval of the Settlement.

In sum, the Settlement, on its face, is fair, reasonable, and adequate, and not the product of collusion. *See Isby*, 75 F.3d at 1198, 1200. In addition, "the proposed settlement is 'within the range of possible approval'" and should be submitted to the Class Members for their consideration. *Armstrong*, 616 F.2d at 314. The Court should grant preliminary approval.

## VI.     THE PROPOSED CLASS NOTICE SHOULD BE APPROVED.

The content of the proposed Class Notice, which is attached to the Settlement Agreement as Exhibit A, fully complies with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> [T]he best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The detailed information in the proposed Class Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that Class Notice will be mailed by the Settlement Administrator to the last known mailing and email address of each Class Member within 14 days of receipt of the complete Class List. Exhibit 1, ¶ 50(b). For all mailings returned as undeliverable, the Settlement Administrator shall perform a reverse look-up to find updated addresses and will cause the Notice mailing to be re-mailed to those members of the Settlement Class. *Id*. The proposed Class Notice contains information about how to exclude oneself from or object to the Settlement. *See* Exhibit A to the Settlement Agreement. Class Members will have up to and including 45 days from the date the Notice is mailed and emailed to exclude themselves from the Settlement. Exhibit 1, ¶¶ 27, 59(a). The Class Notice further explains that, after the Settlement Agreement receives Final Approval and after any appeals, Class Members will receive a settlement check and will have waived their BIPA claims and related causes of action. *See* Exhibit A to the Settlement Agreement.

### VII. PRELIMINARY APPROVAL OF PLAINTIFF'S COUNSEL'S REASONABLE FEES AND COSTS IS APPROPRIATE

In the Seventh Circuit, the favored approach to awarding reasonable attorneys' fees in class litigation is as a percentage of the common fund. *See Matter of Cont'l Ill. Secs. Litig.*, 962 F.2d 566, 572-74 (7th Cir. 1992), *later proceeding*, 985 F.2d 867 (7th Cir. 1993). To determine what percentage of the fund should be awarded, the court looks to the market price for legal services, which has traditionally ranged from 33.3% to 40% in comparable litigation. *See Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02 Civ. 1109, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004).

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method (*see Florin v. Nationsbank of Ga., N.A.*, 24 F.3d 560, 565-66 (7th Cir. 1994))—the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *5 (N.D. Ill. Dec. 23, 2016) ("Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements."); *see also Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (approving award totaling one-third of the maximum settlement payment plus costs in FLSA settlement). In fact, the Seventh Circuit has cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 763 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating "the reasonableness of a fee cannot be assessed in isolation from what it buys").[3] Further, the Supreme

---

[3] The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("the trend in this circuit is toward

Court has recognized that a percentage fee award is properly granted from the value of the total benefit that class counsel has created, and therefore necessarily includes the pool of money made available for class members. *Boeing Co. v. VanGemert*, 444 U.S. 472, 479-480 (1980) ("a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").

Accordingly, Plaintiffs' counsel requests that the Court grant preliminary approval of a Fee Award of $1,162,536.30, inclusive of all past and anticipated future attorneys' fees, which represents 33.3% of the Settlement Fund, plus an additional amount for expenses not to exceed $15,000.00.

**CONCLUSION**

While the Parties believe the Settlement merits Final Approval, the Court need not make that determination at this time. The Court is being asked only to permit notice of the terms of the Settlement to be sent to the Class and to schedule a hearing, under Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members of the fairness of the Settlement, the benefits to be received by Class Members, and Class Counsel's request for a Fee Award. *See* 5 James Wm. Moore, Moore's Federal Practice ¶ 23.80[1], at 23-36 (3d ed. 2001). For the reasons set forth above, Plaintiff respectfully requests that the Court grant this Unopposed Motion for Preliminary Approval of Class Action Settlement and enter the Proposed Order, attached as Exhibit 4.

Date: August 5, 2022                Respectfully Submitted,

                                                  */s/ Haley R. Jenkins*

---

the percentage method"); *see also In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"), *citing In re Prudential*, 148 F.3d 283, 333 (3d Cir. 1998) (internal quotation marks omitted).

James B. Zouras
Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
jzouras@stephanzouras.com
hjenkins@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on August 5, 2022, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

*/s/ Haley R. Jenkins*